# Erie R. R., Appellant, *v.* Public Service Commission.

*Railroads—Grade crossings—Abolition—Apportionment of expenses—Police power—Public Service Commission — Eminent domain—Implied right—Damages—Acts of July 26, 1913, and July 17, 1917.*

1. Under the Acts of July 26, 1913, P. L. 1374, as amended by the Act of July 17, 1917, P. L. 1025, in a proceeding to abolish a

grade crossing, the Public Service Commission may order the municipality to pay the railroad company certain fixed sums and the latter to do the work, furnish the material, and bear the remaining expense necessary for the elimination of the crossing. The only requirement is that the order be just and reasonable.

2. The law does not require the total expense to be prorated among the respective parties upon a percentage basis.

3. The authority to abolish grade crossings is founded upon the police power of the State to protect life and property.

4. Where a railroad company has consented to a relocation of the main line of its tracks, it is not necessary for the court to decide whether the Public Service Commission has authority to make an order of relocation.

5. The Public Service Commission, being an arm of the State, acting for the public, is clearly clothed with the right of eminent domain to condemn land to eliminate a grade crossing.

6. The system provided by the Act of 1917, for the assessment of damages in grade crossing proceedings, and for the payment of the same, implies the right to take.

7. In such proceedings, the property should be taken before the work is started, if it cannot be secured by agreement, and its value ascertained approximately.

8. An order for the abolition of a grade crossing should be based upon a finding of its dangerous character, and be accompanied by approved plans and specifications, made a part thereof, exhibiting in detail the method of elimination, and a description of property necessary to be acquired therefor, with an order condemning the same and directing proper proceedings to fix the value thereof, if not already done.

9. It should further state the estimated cost of the improvement and property damage, so far as may be ascertained, and apportion the same among the respective parties, and direct when and by whom the work shall be done.

Argued May 24, 1921. Appeal, No. 22, May T., 1921, by plaintiff, from judgment of Superior Court, March T., 1921, No. 9, affirming order of Public Service Commission, Complaint Docket, 2642, in case of Erie Railroad Co. v. Public Service Commission. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from order of Public Service Commission. See 76 Pa. Superior Ct. 170.

From the record it appeared that the Motor Club of Lackawanna County presented a petition to the Public Service Commission for an order directing the abolition of a grade crossing at a point where State Highway No. 168 crosses at grade the tracks of the Erie Railroad in the Borough of Elmhurst. Hearings were had at which the railroad company appeared by counsel, participated in the examination of witnesses, offered evidence and took part in the discussion of the various questions which arose, and, at the last hearing before the commission, consented and agreed to the relocation, as appears by the opinion of the Superior Court, page 180. The report and order of the Public Service Commission is quoted in full in the report of the case in 76 Pa. Superior Ct. 170.

The Superior Court sustained the order of the Public Service Commission. The Erie Railroad Co. appealed.

*Error assigned,* among others, was judgment, quoting it.

*Douglass D. Storey* and *Ralph J. Baker,* of *Hause, Evans & Baker,* with them *Duane E. Minard,* for appellant.—No case has held that a railroad can be forced to abandon its right-of-way to eliminate a crossing. Such a compulsory abandonment is so clearly a taking of its private property that compensation must be made: Murdock v. Pittsburgh, 256 Pa. 268; Harrisburg, etc., Turnpike Co. v. Harrisburg, etc., Ry., 177 Pa. 585; Phila., etc., St. Ry. Co.'s Petition, 203 Pa. 355.

The action of the commission was confiscatory: Washington ex rel. Oregon R. R. & Navigation Co. v. Fairchild, 224 U. S. 529.

The commission has no authority to order relocation or change of the main line of a railroad, to vacate or

abolish a grade crossing: Erie v. P. S. C., 74 Pa. Superior Ct. 265.

*Frank M. Hunter,* with him *John Fox Weiss,* for appellee.—The commission's order was not confiscatory: Northern Pacific Ry. v. North Dakota, 250 U. S. 135; Dakota Central Tel. Co. v. South Dakota, 250 U. S. 163.

The commission may condemn land for a right-of-way under the circumstances: Great Bend Twp. v. R. R., 67 Pa. Superior Ct. 95.

OPINION BY MR. JUSTICE WALLING, July 1, 1921:

Section 12, of article V of the Public Service Commission Law of July 26, 1913, P. L. 1374, 1409, as amended by the Act of July 17, 1917, P. L. 1025, 1030, provides, inter alia, that, "The commission shall also have exclusive power, upon its own motion or upon complaint, and after hearing as hereinafter provided (of which all the parties in interest, including the owners of adjacent property, shall have due notice), to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered, or to be abolished, according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission." In the present case the respondent (appellant) appeared and participated at the hearing of the question as to the abolition of the grade crossing, and also at the later hearing to adjust the details as to the method, expense, etc., thereof; hence the commission's order apportioning the expense was made after respondent had been fully heard and nothing yet is shown to indicate it is unjust or unreasonable. The law does not require the total expense to be prorated among the respective parties upon a percentage basis, therefore, the commission may order the municipalities, etc., to pay the railroad company certain fixed sums and the latter to do the work, furnish the material and bear the

expense necessary for the elimination of the grade cross-
ing.   The only requirement is that the order be just
and reasonable.   While the elimination of grade cross-
ings in this State is governed by statute, yet in general
"It is well settled that railroad corporations may be re-
quired, at their own expense, not only to abolish exist-
ing grade crossings but also to build and maintain suit-
able bridges or viaducts to carry highways, newly laid
out, over their tracks or to carry their tracks over such
highways": Chi., Mil. & St. P. Ry. v. Minneapolis, 232
U. S. 430, 438.   Certainly, if the entire cost of separating
the grades may be imposed upon the railroad company,
a just and reasonable proportion thereof may be.   The
authority to abolish grade crossings is founded upon the
police power of the State to protect life and property,
and the Superior Court, after reviewing all the evidence,
holds its exercise in the present case does not amount to
a confiscation of appellant's property, and, on the facts
of the case, so far as shown, the finding was justified.

It is not necessary to decide here whether the commis-
sion can order the relocation of the main line of a rail-
road to abolish a grade crossing, for, as fully appears in
the facts stated by the Reporter, the appellant railroad
company, at the last hearing before the commission, con-
sented to and agreed upon such relocation.   No other
construction can be placed upon what there occurred.
Such consent having been acted upon cannot be with-
drawn.

The commission is an arm of the State, acting for the
public, and clearly clothed with the right of eminent do-
main in the elimination of grade crossings.   Section 12
above referred to (P. L. 1917, p. 1030), provides a com-
prehensive system for recovery of damages which the
owners of adjacent property taken, injured, or destroyed,
may sustain in the construction, relocation, alteration,
or abolition of any such crossing.   The duty of paying
for property taken implies the right to take.   Further-
more, there could seldom be a separation of grades with-

out the power of eminent domain, as such change usually results in injury to private property. The commission's right to exercise the power of eminent domain arises from necessary implication: 20 Corpus Juris 533. The rule is well stated by this court in Linton v. Sharpsburg Bridge Co., 1 Grant 414, that, "Where the law authorizes a road to be made, it authorizes the taking of the land needed for the purpose, though it should not expressly say so. And just as certainly, if not so plainly, where it authorizes the erection of a bridge, it authorizes the taking of the land for its abutments, when compensation is also provided for, even though it be contained in no express terms. The necessary incidents of an authority expressly granted need not be themselves expressed." The real question in the case at bar is not the commission's right of eminent domain in the abstract, which cannot be doubted, but its concrete right to condemn land for appellant's proposed new right-of-way. Separation of the grades, however, involves both the highway and the railroad, and, where necessary to accomplish the desired result, the commission may condemn a new right-of-way as well for one as the other; as above stated, the right to force a change of location of a railroad is not here involved. A railroad company may condemn land for a new right-of-way and, with its consent, the commission should not have less power, when it is agreed such change is necessary in the abolition of a grade crossing.

Section 12 of the act (P. L. 1917, p. 1030) further provides, "The compensation for damages which the owners of adjacent property taken, injured, or destroyed, may sustain......shall, after due notice and hearing, be ascertained and determined by the commission; and such compensation, as well as the expense of the said construction, relocation, alteration, or abolition of any such crossing, shall be borne and paid, as hereinafter provided, by the public service company or companies or municipal corporations concerned, or by the Common-

wealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid. In prescribing the terms and conditions upon which any such crossing may be constructed or relocated, or altered or abolished, and the proportionate contributions to the expense thereof, including the damages or compensation to the owners of adjacent property, as aforesaid, the commission may, among other things, take into consideration the relative importance to the public of the services rendered by the public service companies concerned." We find in the printed record no action of the commission condemning or appropriating the property in question for right-of-way or determining the compensation therefor; such action should be had and the property taken, if it cannot be secured by agreement, and its value ascertained approximately, before the work is started. In fact, under the statute, such action should properly precede the final order apportioning the expense, etc., otherwise it cannot be definitely known that the order is just and reasonable.

It would seem that an order for the abolition of a grade crossing should be based upon a finding of its dangerous character and be accompanied by approved plans and specifications, made a part thereof, exhibiting in detail the method of elimination and a description of property necessary to be acquired therefor, with an order condemning the same and directing proper proceedings to fix the value thereof, if not already done; also stating the estimated cost of the improvement and property damage so far as may be ascertained, and apportioning the same among the respective parties, and directing when and by whom the work shall be done.

Ordinarily we would reverse the order of the Public Service Commission and direct it to ascertain and state what, in its opinion, the land damages would be for the taking of property necessary for the elimination of the

grade crossings in question, and the construction of the subway according to the plans and specifications on file, and to make a formal order condemning such property necessary, as well as to complete, by order, all legal requirements necessary for the abolition of a grade crossing as indicated in this opinion. But, because of the manner in which this record is submitted and the attitude of the appellant before the commission, we think it necessary to only affirm the order of the Superior Court, which is accordingly done, and the record is remitted to the Public Service Commission, at the cost of the appellant.